# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:14-cv-13185-RGS

Knox v. Whole Foods Market, Inc.
Assigned to: Judge Richard G. Stearns
Demand: $5,000,000
Cause: 28:1330 Breach of Contract

Date Filed: 08/01/2014
Jury Demand: Plaintiff
Nature of Suit: 195 Contract Product Liability
Jurisdiction: Diversity

**Plaintiff**

**Tracey Knox**
*on behalf of himself and all others similarly situated*

represented by **Jon M. Herskowitz**
Baron & Herskowitz
9100 S. Dadeland Blvd
Suite 1704
Miami, FL 33156
305-670-0101
Email: jon@bhfloridalaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tina Wolfson**
Ahdoot & Wolfson, P.C.
1016 Palm Avenue
west Hollywood, CA 90069
310-474-9111
Fax: 310-474-8585
Email: twolfson@ahdootwolfson.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William H. Anderson**
Cuneo Gilber & Laduca, LLP
507 C Street NE
Washington, DC 20002
202-789-3960
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erica C. Mirabella**
132 Boylston Street, 5th Floor
Boston, MA 02116
617-580-8270
Fax: 6175831905
Email: emirabella@gnemlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sarah McDonagh**
*on behalf of herself and all others*
*similarly situated*

represented by **Jon M. Herskowitz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tina Wolfson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William H. Anderson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erica C. Mirabella**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Derek Guluba**
*on behalf of himself and all others*
*similarly situated*

represented by **Jon M. Herskowitz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tina Wolfson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William H. Anderson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erica C. Mirabella**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barbara Trevino**
*on behalf of herself and all others*
*similarly situated*

represented by **Jon M. Herskowitz**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Tina Wolfson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William H. Anderson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erica C. Mirabella**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| Whole Foods Market, Inc. | represented by | **Dawn M. Mertineit**<br>Seyfarth Shaw<br>World Trade Center East, Suite 300<br>Two Seaport Lane<br>Boston, MA 02210<br>617-946-4917<br>Fax: 617-790-5344<br>Email: dmertineit@seyfarth.com<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|

**Defendant**

| Whole Foods Market Group, Inc. | represented by | **Dawn M. Mertineit**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Stephen C. Bazarian**<br>Seyfarth Shaw<br>World Trade Center East<br>Two Seaport Lane<br>Suite 300<br>Boston, MA 02210-2028<br>617-946-4800<br>Fax: 617-946-4801<br>Email: sbazarian@seyfarth.com<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|

**Defendant**

| WFM Private Label, L.P. | represented by | **Stephen C. Bazarian**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/01/2014 | 1 | COMPLAINT against Whole Foods Market, Inc. Filing fee: $ 400, receipt number 0101-5129321 (Fee Status: Filing Fee paid), filed by TRACEY KNOX. (Attachments: # 1 CATEGORY FORM, # 2 CIVIL COVER SHEET)(Mirabella, Erica) (Entered: 08/01/2014) |
| 08/01/2014 | 2 | ELECTRONIC NOTICE of Case Assignment. Judge Richard G. Stearns assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Jennifer C. Boal. (Abaid, Kimberly) (Entered: 08/01/2014) |
| 08/01/2014 | 3 | Summons Issued as to Whole Foods Market, Inc.. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (Paine, Matthew) (Entered: 08/01/2014) |
| 08/29/2014 | 4 | AMENDED COMPLAINT against Whole Foods Market Group, Inc., WFM Private Label, L.P., filed by Tracey Knox.(Mirabella, Erica) (Entered: 08/29/2014) |
| 09/04/2014 | 5 | MOTION for Leave to Appear Pro Hac Vice for admission of William Anderson Filing fee: $ 100, receipt number 0101-5173865 by Tracey Knox. (Attachments: # 1 Affidavit, # 2 Proposed Order)(Mirabella, Erica) (Entered: 09/04/2014) |
| 09/05/2014 | 6 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 5 Motion for Leave to Appear Pro Hac Vice Added Anderson. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Flaherty, Elaine) (Entered: 09/05/2014) |
| 09/08/2014 | 7 | MOTION for Leave to Appear Pro Hac Vice for admission of Jon M. Herskowitz Filing fee: $ 100, receipt number 0101-5177921 by Tracey Knox. (Attachments: # 1 Affidavit, # 2 Proposed Order)(Mirabella, Erica) (Entered: 09/08/2014) |
| 09/08/2014 | 8 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 7 Motion for Leave to Appear Pro Hac Vice Added Herskowitz. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Flaherty, Elaine) (Entered: 09/08/2014) |
| 09/09/2014 | 9 | NOTICE of Appearance by Stephen C. Bazarian on behalf of WFM Private Label, L.P., Whole Foods Market Group, Inc. (Bazarian, Stephen) (Entered: 09/09/2014) |
| 09/09/2014 | 10 | STIPULATION re 4 Amended Complaint - *Stipulation to Extend Time to Respond -* by WFM Private Label, L.P., Whole Foods Market Group, Inc.. (Bazarian, Stephen) (Entered: 09/09/2014) |
| 09/10/2014 | 11 | Judge Richard G. Stearns: ELECTRONIC ORDER entered treating parties' |

| | | |
|---|---|---|
| | | Stipulation as a joint motion to extend defendants' time to respond to the Amended Class Action Complaint until September 29, 2014. The motion is ALLOWED. In the future, any request to alter the mandates of the federal rules of civil procedure must be made in the form of a motion. (Zierk, Marsha) (Entered: 09/10/2014) |
| 09/23/2014 | 12 | MOTION for Leave to Appear Pro Hac Vice for admission of Tina Wolfson Filing fee: $ 100, receipt number 0101-5202793 by Derek Guluba, Tracey Knox, Sarah McDonagh, Barbara Trevino. (Attachments: # 1 Affidavit, # 2 Proposed Order, # 3 Notice of Change of Address)(Mirabella, Erica) (Entered: 09/23/2014) |
| 09/24/2014 | 13 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 12 Motion for Leave to Appear Pro Hac Vice Added Wolfson. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Flaherty, Elaine) (Entered: 09/24/2014) |
| 09/26/2014 | 14 | NOTICE of Appearance by Dawn M. Mertineit on behalf of Whole Foods Market Group, Inc., Whole Foods Market, Inc. (Mertineit, Dawn) (Entered: 09/26/2014) |
| 09/26/2014 | 15 | Assented to MOTION for Extension of Time to October 31, 2014 to Respond to Plaintiffs' First Amended Complaint by WFM Private Label, L.P., Whole Foods Market Group, Inc..(Bazarian, Stephen) (Entered: 09/26/2014) |
| 09/29/2014 | 16 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 15 Motion for Extension of Time until October 31, 2014 to answer or otherwise respond to the First Amended Complaint in light of the parties' anticipation that plaintiff will file an unobjected to Second Amended Complaint. Defendant will have 14 days, pursuant to the Federal Rules of Civil Procedure, to answer the Second Amended Complaint. (RGS, int2) (Entered: 09/29/2014) |

CUNEO, GILBERT & LADUCA, LLP
Matthew E. Miller (BBO# 559353)
507 C Street NE
Washington, DC 20002
Telephone:  202-789-3960
Facsimile: 202-589-1813

MIRABELLA LAW
Erica Mirabella (BBO# 676750)
132 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: 617-580-8270
Facsimile: 617-583-1905

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRACEY KNOX, SARAH MCDONAGH, DEREK GULUBA, and BARBARA TREVINO on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WHOLE FOODS MARKET GROUP, INC. and WFM PRIVATE LABEL, L.P., <br><br> Defendants. | CASE No. 1:14-cv-13185 <br><br> **AMENDED CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Tracey Knox, Sarah McDonagh, Derek Guluba and Barbara Trevino (together

"Plaintiffs") file this class action complaint ("Class Action Complaint") on behalf of themselves

and all others similarly situated, by and through the undersigned attorneys, against Whole Foods

Market Group, Inc. and WFM Private Label, L.P. (hereinafter, collectively, " Whole Foods" or

"Defendants"), and state as follows:

## INTRODUCTION & FACTUAL BACKGROUND

1.      This is an action on behalf of Plaintiffs, and a class of all others similarly situated

against Defendants, the manufacturers, promoters and sellers of Whole Foods 365 Everyday

Value Plain Greek Yogurt (hereinafter the "Yogurt"), which expressly states on the label that it

contains 2 grams of sugar per one cup serving.  This statement is false.  In fact, in six recent tests

conducted by the venerable consumer publication Consumer Reports, the Yogurt had 11.4 grams

of sugar per serving on average—nearly six times the stated amount.  The claimed amount of

sugar is much lower than that of competitors, which generally range between five and 10 grams

of sugar per serving, and is a big draw for consumers who look to limit their sugar intake.

Additionally, low sugar is generally considered healthier, and the low sugar characteristics of a

food product command a premium in the marketplace.  As a result of the false representation,

Defendants were able to sell the Yogurt at a higher price than they would have had they labeled

the sugar content accurately.  Thus, all consumers who purchased the Yogurt, whether or not

they cared about the sugar content, paid more for the Yogurt than they would have had it been

truthfully labeled.  As a result of Defendants' materially false statements concerning the sugar

content in the Yogurt, Plaintiffs and the proposed class ("Class") (defined in ¶ 20 below) have

been harmed and have suffered damages.

2.      One of the mottos of Whole Foods is "Health Starts Here".  Defendants market

itself and its 365 brand products as a healthier alternative to other stores and brands.  Defendants

advertise and warrant the statements on their label, and as they pertain to the Yogurt the

statements are demonstrably false.  As Consumer Reports aptly put it, "Given Whole Foods' care

and attention to food content, this discrepancy in the sugar content in one of its own branded products is that much more bewildering."  Even a cursory review of the Yogurt compared to competitors should have revealed to the nutrition experts working for Defendants that something was wrong.

3.      The Yogurt market in the United States is enormous by any standard—it tops $7 billon dollars per year.  Greek yogurt, in particular, comprises a major portion of the overall yogurt market, due in large measure to its high protein content and perceived health value over traditional yogurt.

4.      Among health conscious consumers, yogurt can be and is an important component of a healthy diet.  For those with health conditions, such as diabetes, the accuracy of sugar content in products is extremely important.  Defendants have a duty to provide accurate information on their product labels, but they have failed to satisfy that obligation.

Additionally, any consumer who purchased the Yogurt suffered harm, irrespective of their health conscious sensibilities or health conditions, in the form of a higher price that Defendants were able to command for the product based on the false representation regarding its sugar content.

5.      Defendants are responsible and liable for, among other things, providing notice to consumers of accurate information concerning the sugar content of the Yogurt and repayment of their ill-gotten gains, as well as other related consequential damages that resulted from Defendants' provision of false and misleading information concerning the Yogurt.

## **PARTIES**

6.      Plaintiff Tracey Knox is a resident of Brookline, Massachusetts.  Over the last several years, and as recently as July 2014, Plaintiff Knox has repeatedly purchased the Yogurt.

Plaintiff purchased the Yogurt in part because of the low sugar content. A picture of Yogurt recently purchased by Plaintiff in late July 2014 appears below:



Although Plaintiff was unaware of the Consumer Reports information concerning the false information Defendants provided about the Yogurt at the time of purchase, Plaintiff's purchase occurred after Defendants were made aware of the discrepancies demonstrated by Consumer Reports' testing. Despite notice of the discrepancy Defendants have not removed the Yogurt from the shelves or provided any corrective notice to purchasers, like Plaintiff.

7.      Plaintiff Sarah McDonagh is a resident of Reading, Massachusetts. Plaintiff McDonagh has repeatedly purchased the Yogurt in part because of its low sugar content. As recently as mid-August 2014, Ms. McDonagh purchased the Yogurt from her local Whole Foods store located at 100 Market Street, Lynnwood, Massachusetts.

8.      Plaintiff Derek Guluba is a resident of Wheaton, Illinois. Plaintiff Guluba has purchased the Yogurt several times in part because of its low sugar content. Most recently,

Plaintiff Guluba purchased the Yogurt in July 2014 from his local Whole Foods store located at 151 Rice Lake Square, Wheaton, Illinois.

9.      Plaintiff Barbara Trevino is a resident of Los Angeles, California.  Plaintiff Trevino has repeatedly purchased the Yogurt, most recently in early August 2014 in part because of its  low sugar content.  Plaintiff Trevino purchased the Yogurt most recently from her local Whole Foods, located at 6350 West 3rd Street, Los Angeles, California.

10.      Whole Foods Market Group, Inc., is incorporated in Delaware and maintains it principal executive offices at 550 Bowie Street in Austin, Texas.  Defendant Whole Foods Market Group, Inc. is a subsidiary of Whole Foods Market, Inc., which is simply a holding company. The most recent form 10k indicates that as of September 29, 2013, Whole Foods operates 347 stores in 40 states and the District of Columbia.  There are 73 Whole Foods Stores in California.  Second only to California, there are 28 Whole Foods stores operating in Massachusetts.  There are 18 Whole Foods stores operating in Illinois.

11.      WFM Private Label, L.P. is incorporated in Delaware and maintains its principal executive offices at 550 Bowie Street in Austin, Texas.  Upon information and belief, WFM Private Label, L.P. is responsible for Whole Foods' branded products, such as the Yogurt.

## JURISDICTION AND VENUE

12.      As a result of regularly conducting business, marketing, distributing, promoting and/or selling products—including the Yogurt—throughout the State of Massachusetts, Defendants obtained the benefits of the laws of Massachusetts and profited from Massachusetts commerce.

13.      This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332(d)(2)(A), in that amount in controversy exceeds $5,000,000 and the proposed class includes persons who

are citizens of States different from the State where Defendants are incorporated and have their principal place of business. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because most of the events or omissions giving rise to the Massachusetts Plaintiffs' claims occurred in this District and Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

15.     Upon information and belief Defendants are, and at all times relevant hereto were, engaged in the business of designing, developing, manufacturing, distributing, marketing, and selling, among other things, the Yogurt. Defendants promoted, distributed and sold the Yogurt through their 347 stores located throughout the United States, including the 28 stores located in the Commonwealth of Massachusetts.

16.     Defendants were negligent, at the very least, in their testing by their failure to provide accurate nutritional information or exercise reasonable care in ensuring that the nutritional information on the label of the Yogurt was accurate. Defendants knew or should have known that the information they provided concerning the sugar content of the Yogurt was false.

17.     In the face of powerful evidence from Consumer Reports and test results that simply do not pass the straight-face test, Defendants weakly responded to the evidence of its false nutritional information by simply asserting that they relied upon testing results from reputable third-party labs. This statement suggests that Defendants relied upon multiple labs. But Defendants did not identify any lab by name, nor when the testing was conducted. Indeed, it stands to reason that any reputable lab experienced in food testing would compare its test results with test results for other similar products as the most basic form of quality control. Consumer

Reports indicated that it tested 27 varieties of Greek yogurt with five grams of sugar being the absolute lowest sugar content of any other Yogurt.  It does not appear that Defendants' labs are as reputable as they suggest.  A more logical interpretation is that Defendants recognized a competitive advantage by providing nutritional information that was markedly better than the other manufacturers in the marketplace.

18.     The misleading nature of Defendants' statements concerning the Yogurt are all the more concerning because of the numerous members of the consuming public for whom sugar is not just an important factor in their diet, but an essential part of their health and wellbeing.  For example, for those with diabetes every gram of sugar must be counted with exactitude.  Defendants' callous disregard and/or negligence put these and other people at risk.

19.     Even more egregious, is Defendants' refusal to recall the Yogurt after it was on notice of the mislabeling, and continuing to sell the product with the false labeling.

20.      Due to the materially misleading statements at issue in this case, Plaintiffs and members of the Class have suffered harm and injury through their purchase of Yogurt that did not conform to Defendants' advertising or warranties.

**Inadequate Testing of the Yogurt**

21.     Defendants did not properly test the Yogurt for sugar and, as a result provided false nutritional information to the members of the Class.

22.     Consumer Reports indicated that of 27 competitors the closest had two-and-a-half-times as much sugar as the Yogurt; this should have raised red flags, yet it apparently did not.  This is all the more striking since Defendants run a company purported to be the healthiest large grocery store chain.  Indeed, despite the Consumer Reports story, Defendants have apparently made no effort to mitigate losses by pulling the Yogurt from its shelves or re-labeling

7

it with accurate information.

## False Advertising of the Yogurt

23.     Defendants falsely advertised that the Yogurt contains two grams of sugar per serving.  In reality the Yogurt contains over 11 grams of sugar per serving.  This misstatement constitutes a substantial misrepresentation of a material fact.

24.     Had Defendants not made the false representation regarding the sugar content of the Yogurt, Plaintiffs and the members of the Class would not have purchased the Yogurt, or would have paid less for it.

## <u>CLASS ACTION ALLEGATIONS</u>

25.     Plaintiffs seek to bring this case as a class action, pursuant to Rule 23 of the Federal Rules of Procedure. The proposed class (the "National Class") is defined as follows:

> All United States consumers who purchased the Yogurt on or after August 1, 2010.

Additionally, or alternatively, Plaintiffs propose the following "State Subclasses".

The "Massachusetts Subclass"

> All Massachusetts consumers who purchased the Yogurt on or after August 1, 2010.

The "Illinois Subclass"

> All Illinois consumers who purchased the Yogurt on or after August 1, 2010.

The "California Subclass"

> All California consumers who purchased the Yogurt on or after August 1, 2010.

Collectively the National Class, the Massachusetts Subclass, the Illinois Subclass and the California Subclass are referred to herein as the "Class." Expressly excluded from the National Class and State Subclasses are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest, or which have a controlling interest in Defendants, and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

### Numerosity

26.     Defendants have harmed and continue to harm members of the Class with their false nutritional information. The members of the proposed Class are so numerous that joinder of all members is impracticable.

27.     The total number of Class members is unknown, but such information is available through records in the control of Defendants. However, due to the size of the market for yogurt in the United States and the fact that Defendants sell their Yogurt in at least 347 stores dispersed throughout at least 40 states and the District of Columbia, Plaintiffs believe the Class consists of many thousands of consumers, making joinder of all Class members impracticable.

### Common Questions of Law and Fact

28.     Common questions of law and fact affect the right of each Class member and common relief by way of damages and injunctive relief is sought for Plaintiffs and Class members.

29.     The harm that Defendants have caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

(a) Whether Defendants sold the Yogurt with false nutritional data concerning the amount of sugar per serving;

(b) Whether Defendants failed to prevent damages by failing to remove the Yogurt from their shelves when the false information became public;

(c) Whether Defendants were unjustly enriched by the sale of the Yogurt through false and/or deceptive tactics;

(e) Whether Defendants knowingly provided false information to Plaintiffs and the Class members;

(g) Whether Defendants omitted material information when they sold the Yogurt;

(i) Whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

### Typicality

30.     The claims and defenses of the representative Plaintiffs are typical of the claims and defenses of the Class members.

### Adequacy of Representation

31.     The representative Plaintiffs will fairly and adequately assert and protect the interests of the Class:

(a) They have hired attorneys who are experienced in prosecuting class action claims—including food labeling claims—and will adequately represent the interests of the Class; and

(b) They have no conflict of interest that will interfere with the maintenance of this class action.

**Superiority**

32.     A class action provides a fair and efficient method for the adjudication of this

controversy for the following reasons:

(a)     The common questions of law and fact set forth herein predominate over

any questions affecting only individual Class members;

(b)     The Class is so numerous as to make joinder impracticable. However, the

Class is not so numerous as to create manageability problems. There are

no unusual legal or factual issues that would create manageability

problems;

(c)     Prosecution of a separate action by individual members of the Class would

create a risk of inconsistent and varying adjudications against Defendants

when confronted with incompatible standards of conduct;

(d)     Adjudications with respect to individual members of the Class could, as a

practical matter, be dispositive of any interest of other members not parties

to such adjudications, or substantially impair their ability to protect their

interests;

(e)     Upon information and belief, Defendants are responsible for the design

and manufacture of the Yogurt, which was distributed and sold in

Massachusetts, making this forum appropriate for the litigation of the

claims of the entire Class; and

(f)     The claims of the individual Class members are small in relation to the

expenses of litigation, making a Class action the only procedure in which

Class members can, as a practical matter, recover.  However, the claims of

11

individual Class members are large enough to justify the expense and effort in maintaining a class action.

## TOLLING OF ANY APPLICABLE STATUTES OF LIMITATIONS

33. Plaintiffs and putative members of the Class are within the applicable statute of limitation for the claims presented here. Defendants failed to disclose this known but non-public information about the Yogurt—information over which it had exclusive control until at the earliest July 2014. Because Plaintiffs and Class members therefore could not reasonably have known that the sugar content on the Yogurt was false, Defendants are estopped from asserting any statute of limitation defenses that might otherwise be applicable to the claims asserted herein.

## COUNT I
## BREACH OF WARRANTY
### (On Behalf of the National Class and State Subclasses)

34. Plaintiffs and the Class incorporate by reference each factual allegation in this Complaint as though fully set forth herein.

35. Whole Foods sold the Yogurt in its regular course of business. Plaintiffs and Class members purchased the Yogurt.

36. Defendants made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiffs, Class members and Defendants. Defendants gave these express warranties to Plaintiffs and Class members in written form on the labels of the Yogurt.

37. Defendants' written affirmations of fact, promises and/or descriptions as alleged are each a written warranty.

12

38.     Defendants breached the warranty because the Yogurt's nutritional labeling of sugar content per serving is false and the Yogurt did not contain the properties Defendants represented.

39.     The sugar content was inaccurate when the Yogurt left Defendants' possession, was distributed to Defendants' 347 markets and remained false when the Yogurt was sold to Plaintiffs and the Class members.  The false nutritional information provided on the label was undiscoverable to Plaintiffs and the Class members at the time of purchase of the Yogurt.

40.     All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue.  Defendants had actual and/or constructive notice of the false labeling information and to date have taken no action to remedy their breaches of express and implied warranty.

41.     Defendants were on notice of their breaches of express and implied warranty by virtue of the Consumer Reports article referenced herein, as well as numerous stories including one that appeared on Good Morning America.  Further, Defendants previously knew or should have known of the falsity of the label because the claimed sugar content on the Yogurt was strikingly low when compared to the entire remainder of the Greek yogurt business segment. Defendants have refused to remedy such breaches.

42.     By placing the Yogurt into the stream of commerce, by operation of law including Mass Gen. Laws Ann. Ch. 106, §§ 2–314 – 318, California Civil Code §1791 *et seq.*, and 810 ILCS 5/2-314 *et seq.*, Defendants also impliedly warranted to Plaintiffs and Class members that the Yogurt was accurately labeled in conformance with the law.

43.     Defendants' breaches of warranty have caused Plaintiffs and Class members to

suffer injuries, paying for falsely labeled products, and entering into transactions they would not have entered into for the consideration paid. As a direct and proximate result of Defendants' breaches of warranty, Plaintiffs and Class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the Yogurt as promised and the value of the Yogurt as delivered.

44.     As a result of the breach of these warranties, Plaintiffs and Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT II
## UNJUST ENRICHMENT
### (On Behalf of the National Class and State Subclasses)

45.     Plaintiffs re-allege and incorporate by reference all factual allegations in this Class Action Complaint as though set forth fully herein.

46.     Plaintiffs and the Class have conferred substantial benefits on Defendants by purchasing the Yogurt, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

47.     Defendants either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Yogurt would be as represented and warranted. For Defendants to retain the benefit of the payments under these circumstances is inequitable.

48.     Defendants, through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Yogurt reaped benefits, which resulted in Defendants' wrongful receipt of profits.

49.     Equity demands disgorgement of Defendants' ill-gotten gains.  Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiffs and the Class.

50.     As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the Class are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants.

**COUNT III**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On Behalf of the National Class and the State Subclasses)**

51.     Plaintiffs re-allege and incorporate by reference all factual allegations contained in this Class Action Complaint as though set forth fully herein.

52.     Defendants acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

53.     Plaintiffs, on behalf of themselves and putative Class members, seek a Court declaration of the following:

a.  The Yogurt developed, manufactured, marketed, tested and sold by Defendants on or after August 1, 2010 contained false and misleading nutritional information;

b.  Defendants knew or should have known of the false information they provided to Plaintiffs and Class members and thereby breached their warranties to Plaintiffs and the Class; and

c.  Defendants shall remove all falsely labeled Yogurt from their shelves, or re-label with accurate nutritional information.

15

    d. Defendants shall institute a corrective advertising campaign to educate consumers about the fact that the Yogurt was falsely labeled and to inform them about the true sugar content of the Yogurt.

**COUNT IV**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200** *et seq.*
**(On Behalf of the California Subclass)**

54. Plaintiffs re-allege and incorporate by reference all factual allegations contained in this Class Action Complaint as though set forth fully herein.

55. Business & Professions Code § 17200, et seq. prohibits acts of "unfair competition", which is defined by Business & Professions Code § 17200 as including any "any unlawful, unfair or fraudulent business act or practice . . . ."

56. Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by concealing from Plaintiff Trevino and the California Subclass members the material fact that the sugar content per serving in the Yogurt was nearly six times the claimed amount on the label. Defendants should have disclosed this information because they were in a superior position to know the true facts related to nutritional content of the Yogurt.

57. These acts and practices have deceived Plaintiff Trevino and are likely to deceive persons targeted by such statements and omissions. In failing to disclose the true nutritional information for the Yogurt, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff Trevino and California Subclass members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

58. The injuries suffered by Plaintiff Trevino and California Subclass members are

also greatly outweighed by any potential countervailing benefit to consumers or to competition. Nor are they injuries that Plaintiff Trevino and California Subclass members should or could have reasonably avoided.

59.     Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under Cal. Bus. & Prof. Code § 17200.

<h3 style="text-align:center">COUNT V<br>VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, <em>et seq.</em><br>(On Behalf of the California Subclass)</h3>

60.     Plaintiffs incorporate by reference and re-allege all factual allegations in this Complaint as if fully set forth herein.

61.     Plaintiff brings this claim individually and on behalf of the California Subclass.

62.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") because Defendants' actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

63.     Plaintiffs and each member of the Class are consumers as defined by California Civil Code §1761(d). Defendants intended to sell the Products.

64.     The Products are goods within the meaning of Civil Code §1761(a).

65.     Defendants violated the CLRA in at least the following respects:

a.     in violation of §1770(a)(5), Defendants represented that the Yogurt products have characteristics, ingredients, and benefits which they do not have ;

b.     in violation of §1770(a)(7), Defendants represented that the Yogurt

products are of a particular standard, quality or grade when they are of another;

      c.     in violation of §1770(a)(9), Defendants have advertised the Yogurt products with intent not to sell them as advertised; and

      d.     in violation of §1770(a)(16), Defendants represented that the Yogurt has been supplied in accordance with previous representations, when it was not.

66.     Defendants violated the Act by representing the products having two grams of sugar when in fact they had much more sugar. Defendants knew, or should have known, that the representations and advertisements were false and misleading.

67.     Defendants' acts and omissions constitute unfair, deceptive, and misleading business practices in violation of Civil Code §1770(a).

68.     On August 29, 2014, Plaintiffs sent notice to Defendants in writing, by certified mail, of the violations alleged herein and demanded that Defendants remedy those violations.

69.     If Defendants fail to remedy the violations alleged herein within 30 days of receipt of Plaintiffs' notice, Plaintiffs will amend this seek leave to amend this Class Action Complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA for the California Subclass.

70.     Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally and knowingly provided misleading information to the public.

**COUNT VI**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**(On Behalf of the Illinois Subclass)**

71.     Plaintiffs re-allege and incorporate by reference all factual allegations contained in this Class Action Complaint as though set forth fully herein.

72.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"),

815 ILCS 505/1 *et seq.* ("ICFA") prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

73.     Defendants intended that Plaintiff Guluba and each of the other members of the Illinois Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

74.     As a result of Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff Guluba and each of the other members of the Illinois Subclass have sustained damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a Class action and for judgment to be entered in favor of Plaintiffs and the Class against Defendants as follows:

A.  Enter an order certifying the proposed Class, designating Plaintiffs as the Class representative, and designating the undersigned as Class counsel;

B.  Declare that Defendants are financially responsible for notifying all Class members of the problems with the labeling of the Yogurt;

C.  Declare that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale of the Yogurt, or order Defendant to make full restitution to Plaintiffs and the members of the Class;

D.  For economic and compensatory damages on behalf of Plaintiffs and all members of the Class;

E.  For punitive or exemplary damages;

F.  For injunctive and declaratory relief;

G.  For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

H.  For such other and further relief as this Court deems just and appropriate.

JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  August 29, 2014          Respectfully submitted,

By: /s/ Erica C. Mirabella_____
Erica C. Mirabella (MA Bar No. 676750)
MIRABELLA LAW
1322 Boylston St., 5th Flr.
Boston, MA 02116
(617) 580-8270
(617) 583-1905 (fax)


Matthew E. Miller (MA Bar No. 559353)
William H. Anderson
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960
(202) 789-1813 (fax)

Jon Herskowitz
BARON & HERSKOWITZ
9100 S. Dadeland Blvd.
Suite 1704
Miami, FL 33156
(305) 670-0101
(305) 670-2393 (fax)

Tina Wolfson
Robert Ahdoot
Theodore W. Maya
AHDOOT & WOLFSON, PC
10850 Wilshire Blvd., Suite 370
Los Angeles, California 90024
(310) 474-9111
(310) 474-8585 (fax)

Joe Siprut
SIPRUT PC
17 North State Street
Suite 1600
Chicago, IL  60602
(312) 236-0000
(312) 546-9963 (fax)